UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| SHARON TERHUNE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LELAND DUDEK, *Acting Commissioner of* )<br>*Social Security*, )<br>)<br>Defendant. ) | Civil No. 3:23-cv-00076-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Sharon Terhune seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's administrative decision denying her application for Social Security Disability Insurance and a period of disability.  For the reasons stated below, the Court will **AFFIRM** the administrative decision.

**I**

Ms. Terhune filed her application for benefits on May 28, 2019, alleging disability beginning on May 15, 2019.  [R. 11 at 1.]  Her application was denied initially and upon reconsideration.  *Id.*  Ms. Terhune then submitted a written request for a hearing.  *Id.*  An administrative hearing occurred on May 7, 2020.  *Id.*  After an unfavorable decision issued on May 22, 2020, Ms. Terhune requested review by the Appeals Council.  *Id.*  The Council denied the request for review, rendering the ALJ's May 22, 2020, decision the final decision of the Commissioner.  *Id.* at 1–2; 20 C.F.R. § 404.981.

Ms. Terhune then sought judicial review in this Court.  On July 22, 2022, this Court entered an Order remanding Ms. Terhune's case for a new administrative hearing.  *Id.* at 2. Following the hearing, the ALJ again denied benefits in another decision dated May 11, 2023.

*Id.* The Appeals Council then declined to review the decision on September 8, 2023. *Id.* Ms. Terhune sought an extension of time to file a Complaint with this court. *Id.* She was granted an extension of time on November 2, 2023. *Id.* Now, she again seeks judicial review of the ALJ's May 11, 2023, decision.

Ms. Terhune alleges disability due to a number of impairments. [R. 11 at 2–6.] She suffers from "(a) diabetes, type II; (b) coronary artery disease, with history of stenting; (c) undifferentiated connective tissue disease; (d) fibromyalgia; (e) lupus; and (f) degenerative disc disease of the lumbar spine[.]" [R. 8 at 368.] She also suffers from: "(a) hyperlipidemia; (b) hypertension; (c) gastroesophageal reflux disease; (d) irritable bowel syndrome; (e) vitamin D deficiency; (f) depression; and (g) anxiety," among other issues. *Id.*

In evaluating a claim of disability, the Administrative Law Judge ("ALJ") conducts a five-step analysis. *See* 20 C.F.R. § 404.1520 (2024).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does "not have any impairment or combination of impairments which significantly limit[] [her] physical or mental ability to do basic work activities," then she does not have a severe impairment and is not "disabled" as defined by the regulations. § 404.1520(c). Third, if a claimant's impairments meet

---

[1] The Sixth Circuit summarized this process in *Jones v. Commissioner of Social Security*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. § 404.1520(e); 20 C.F.R. § 404.1545 (2024). Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, he is not "disabled." § 404.1520(e), (f). The claimant has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, she is "disabled." *Id.*; § 404.1520.

Here, the ALJ issued a written decision on May 11, 2023. [R. 8 at 365–76.] At Step 1, the ALJ found that Terhune has not engaged in substantial gainful activity since May 15, 2019. *Id.* at 368. At Step 2, the ALJ found that Terhune "has the following severe impairments: (a) diabetes, type II; (b) coronary artery disease, with history of stenting; (c) undifferentiated connective tissue disease; (d) fibromyalgia; (e) lupus; and (f) degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)). The claimant also has the following nonsevere impairments: (a) hyperlipidemia; (b) hypertension; (c) gastroesophageal reflux disease; (d) irritable bowel syndrome; (e) vitamin D deficiency; (f) depression; and (g) anxiety." *Id.* At Step 3, the ALJ concluded that Terhune "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)[,]" so the analysis continued to the next step. *Id*. at 370. At Step 4, the ALJ concluded that Ms. Terhune:

> has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b). She can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, or crawl. She should avoid concentrated exposure to (a) unprotected heights; (b) moving machinery; (c) extreme heat; (d) extreme cold; and (e) vibration.

*Id*. Finally, at Step 5, the ALJ found that "The claimant is capable of performing past relevant work as a human resource advisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." *Id.* at 375. As a result, the ALJ concluded that Ms. Terhune was not disabled. *Id.* at 376. The Appeals Council found no reason for review. *Id.* at 354. Ms. Terhune now seeks judicial review in this Court.

## II

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

4

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Hum. Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Cutlip*, 25 F.3d at 286; *Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**A**

Ms. Terhune's sole challenge on appeal is that the ALJ failed to adequately evaluate the medical source opinions of APRN Dye-Love. [R. 11.] In particular, Ms. Terhune states that the ALJ "selectively picked through Ms. Dye-Love's findings focusing on the few findings that supported his ultimate decision to completely reject Ms. Dye-Love's functional restrictions." *Id.* at 13. Accordingly, she contends that the ALJ's supportability and consistency analysis as to Ms. Dye-Love was erroneous and warrants reversal. *Id.* at 7–14.

"No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). "[F]or claims made on or after March 27, 2017, ALJs will assess both treating and non-treating medical evaluations based on

5

how well they are supported by the remainder of the record." *Francis v. Saul*, 558 F. Supp. 3d 527, 532 (E.D. Mich. 2021); 20 C.F.R. § 404.1520c.  In making that assessment, the ALJ should consider "supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion." *Francis*, 558 F. Supp. 3d at 533 (citing § 404.1520c(c)).  Supportability and consistency are the most important factors and must be addressed by the ALJ.  § 404.1520c(b)(2).  But an ALJ need not explain how she considered the remaining factors.  *Id.*

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  § 404.1520c(c)(1).  As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  § 404.1520c(c)(2).

### B

### 1

First, Ms. Terhune disputes what she characterizes as the ALJ's failure to "comply with the controlling regulation when it came to adequately considering the supportability factor and explain[ing] how that factor affected the overall persuasiveness of Ms. Dye-Love's expert opinions."  [R. 11 at 9.]  According to the ALJ, Dye-Love's restrictive opinion of Terhune's capacity was belied by her largely normal examinations, stable condition, and improvements in symptoms.  [R. 8 at 374–75.]  Terhune disagrees, stating that the ALJ failed to consider the

evidence supporting Dye-Love's restrictions, including Terhune's excessive pain, failed conservative treatment methods, and objective medical imaging. [R. 11 at 12.]

The Court finds that the ALJ appropriately assessed the supportability factor. In rejecting Dye-Love's RFC, the ALJ explained that Ms. Dye-Love's opinions were contradicted by the results of her own examination. [R. 8 at 374–75]; *see Torchik v. Comm'r of Soc. Sec.*, No. 1:23-CV-1006, 2024 WL 363730, at *10 (N.D. Ohio Jan. 31, 2024) ("[T]he supportability analysis focuses on the physicians' [own] explanations of the opinions."). The ALJ acknowledged that Dye-Love's examination revealed limited right shoulder abduction and positive supine straight leg raise. *Id.* at 374. However, the ALJ noted Terhune's normal gait, reflexes, strength, sensation, and station. *Id.* During Dye-Love's examination of Ms. Terhune, she could get on and off the examination table without difficulty. *Id.* She was not using a hand-held assistive device during the examination, and she could squat to 100% and rise without issue. *Id.* This evidence cast doubt on Dye-Love's claim that Ms. Terhune needed a cane to ambulate and could stand or walk only 2 hours out of an 8-hour workday. *Id.* Contrary to Ms. Terhune's assertion, the ALJ did more than merely "chant[] the magical phrases claiming that Ms. Dye-Love's opinions were not supported[.]" [R. 11 at 9.] Because the ALJ "ma[de] a connection between the evidence relied on and the conclusion reached[,]" his decision must stand.[2] *Tucker*, 775 F. App'x at 226.

---

[2] Contrary to Terhune's assertion, the ALJ also considered Ms. Terhune's statements about her own pain. But he found parts of her testimony to be inconsistent with the record. *Id.* at 371, 375; *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. . . . [A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference[.]") (internal citation omitted).

2

Finally, to the extent Ms. Terhune challenges the ALJ's consistency analysis with respect to APRN Dye-Love, the Court finds that the consistency analysis was reasonable. Ms. Terhune asserts that the ALJ inappropriately ignored the fact that Dye-Love's opinion was consistent with those of APRNs Gilbert and Ibisate. [R. 11 at 12–13.] Gilbert and Ibisate concluded that Ms. Terhune could sit and stand for no longer than 15 minutes at a time. [R. 8 at 374.] They agreed with Dye-Love that Ms. Terhune should lift no more than 10 pounds, and further determined that she should elevate her legs 50% of the workday. *Id.* The ALJ considered these assessments but found them to be unsupported by the nurses' treatment notes and inconsistent with physical exams, radiology, and documented improvements in symptoms. *Id.* The ALJ did not err by failing to state explicitly that Dye-Love's opinion bore similarities to those of Gilbert and Ibisate. *See Rattliff v. Comm'r of Soc. Sec.*, No. 1:20-CV-01732, 2021 WL 7251036, at *10 (N.D. Ohio Oct. 29, 2021), *report and recommendation adopted*, No. 1:20-CV-01732, 2022 WL 627055 (N.D. Ohio Mar. 3, 2022) ("It would be a perversion of social security law to fault an ALJ for failing to credit two *unsupported* medical source opinions because they were *consistent* with each other."); *see also Christopher B. v. O'Malley*, No. 1:23-CV-00028-GNS-LLK, 2024 WL 112499, at *3 (W.D. Ky. Jan. 10, 2024).

Ultimately, the ALJ noted a "great disparity" in the opinion evidence offered by the experts. *Id.* at 373. Though the ALJ rejected Dye-Love's restrictive assessment, he was similarly unpersuaded by the overly optimistic opinions of state agency consultants Fister and Bradley. *Id.* Their conclusion that Ms. Terhune could lift 50 pounds and stand for 6 hours was undercut by her documented diagnoses, including coronary artery disease and connective tissue

disease. *Id.* Ultimately, the ALJ's RFC charted a reasonable path through the admittedly widely divergent medical opinions presented.

Here, the ALJ's conclusion was buttressed by a reasonable supportability and consistency analysis. It seems that reasonable minds can (and do) disagree about the extent of Ms. Terhune's limitations. But that is not a reason to reverse the Commissioner's decision. Because the ALJ's rejection of APRN Dye-Love's RFC was based on substantial evidence and complied with the controlling regulations, it must stand.

### III

Upon review of the record, the Court finds that the ALJ's decision is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports the ALJ's conclusion. *See Her*, 203 F.3d at 389–90; *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). **ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

1. Ms. Terhune's Motion for Summary Judgment **[R. 11]** is **DENIED**;
2. The Commissioner's Decision is **AFFIRMED**; and
3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 19th day of March, 2025.



Gregory F. Van Tatenhove
United States District Judge

9